IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CHARLES TIMMS,

        Petitioner,

v.                                          CIV 01-116 BB/KBM

RON LYTLE, Warden,

        Respondent.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Charles Timms' Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254, *Doc. 1,* and Respondent's Answer, *Doc. 9.* Because Timms filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards[1] apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 93 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Having considered the arguments, pleadings, and relevant law, I find the petition without merit and will recommend to the presiding judge that it be denied.

---

[1] A federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. ___ , 120 S. Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,* 121 S. Ct. 1117 (2001).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Almost seven years after the offenses occurred, a jury convicted Timms on January 22, 1999 of distributing marijuana on two occasions in the spring of 1992 in violation of N.M. STAT. ANN. § 30-31-22. Having prior convictions in 1976 for burglary and aggravated robbery, his eighteen-month sentences for each count were enhanced by four years. The sentences were to run concurrently, and the trial judge suspended all of the sentence except four years plus one year parole. *Answer, Exhs. A, F, J.*[2]

### A. *Extradition and Assignment to State District Court*

At the time the offenses occurred, rookie police officer Abdon Cabello had been on the job less than two weeks. Officer Cabello was supervised and trained by Agent Culbertson who served as the officer in charge of the undercover operations involving Timms. While Officer Cabello posed as a drug buyer, Agent Culbertson provided surveillance and performed the field tests on the substances purchased from Timms. Officer Cabello was the individual who logged the two baggies of evidence into storage. *See Exh. J* at 1-2, 6; *Exh. C,* ¶¶ 4-5, 12-13.

In October 1992, two criminal informations (one for each incident) were filed in the Lea County Magistrate Court.[3] *Exh. J* at 2. In January 1993, Timms was arrested in Texas "pursuant to a warrant issued by the governor of the State of Texas supported by an Extradition Warrant of the Governor of the State of New Mexico." *Exh. C,* ¶ 6; *see also Exh. J* at 2. Timms was residing with his mother in Texas at the time. *Exh. C,* ¶ 6; *Exh. J* at 2. This first extradition

---

[2] Unless otherwise noted, all citations to exhibits are those attached to Respondent's Answer.

[3] As later discussed, it is unclear whether the charges were filed by criminal complaint or information.

attempt proved unsuccessful because "the Texas Court heard evidence regarding an alibi and released Timms from custody." *Exh. J* at 2; *see also Exh. C,* ¶ 8.  Timms returned to his mother's home in Lubbock County, where he resided until his subsequent arrest five years later.  During that time, other members of Timms' family lived in that same neighborhood.  *Exh. C,* ¶¶ 9-10; *Exh. J* at 2-3.

In January 1998, Officer Cabello retrieved the baggies from the evidence room and forwarded them to the crime lab for testing.  *Exh. J* at 6.  Timms was arrested again in Texas in 1998 and this time did not oppose extradition to New Mexico.  *Id.* at 3; *see also Exh. C* at ¶ 11.  Defendant was arraigned in the Lea County Magistrate Court on May 7, 1998.  The State subsequently filed a nolle prosequi on the charges on June 18, 1998, but within one month refiled them to make the charges more "current."  *Exh. J* at 3.  Following a preliminary hearing, the cases were bound over to the District Court.  *Id.*; *see also  Exh. B* (criminal information based on the testimony of Officer Cabello filed in Lea County District Court on July 16, 1998).

### B.  Pretrial & Trial

As of December 1998, Agent Culbertson had been dead for several years, and counsel for Timms moved to dismiss the information on speedy trial grounds.  *Exh. C.*  She argued the long delay in prosecution was both presumptively prejudicial and actually prejudicial due to the agent's death.  *Id.,* ¶¶17-21; *Exh. J* at 3-5.  Timms was prepared to present witnesses who could testify that he lived with his mother since 1993 such that his location during the intervening years was easily obtainable.  The trial judge did not permit this testimony during the hearing, evidently because he found the unsuccessful first extradition attempt was the "cause" of the long delay.  *See Exh. J* at 5; *Exh. E.*

3

The prosecution called two witnesses at trial.  Officer Cabello testified as follows.  He believed Agent Culbertson used a confidential informant to begin the undercover operation against Timms.  The officer did not know what efforts were made to locate Timms between 1993 and 1998 or why the delay was so lengthy.  Officer Cabello acknowledged that he logged in the evidence baggies, but had no reason why he waited so long to have the substances analyzed.  He further indicated that did not know whether or how the police department's evidence room had been inventoried.  *Exh. J* at 4-6.  Officer Cabello also testified about the drug buys in which he participated.  *See Exh. M* at 4.[4]

The crime lab expert testified that he received the baggies in January 1998, and that the contents were old and dried out, but tested positive as marijuana.  The expert opined that food contaminating one of the baggies did not affect the testing.  *Exh. J* at 6-7.  Nothing in the record indicates that Timms called any defense witnesses or introduced any evidence.

### C.  Direct Appeal

Represented by the public defender on appeal, Timms raised four claims: (1) denial of speedy trial; (2) inability to confront Agent Culbertson; (3) admissibility of the baggies of evidence; and (4) insufficiency of the evidence identifying him as a habitual offender.  *See Exhs. J, L, P.*  Following a proposed summary disposition and Timms' objections to it, the New Mexico Court of Appeals issued a panel decision affirming the conviction and sentence, and subsequently denied a motion for rehearing.  *Exhs. K-O.*  The New Mexico Supreme Court denied certiorari on the same four issues, and subsequently denied a motion for reconsideration on February 9, 2000.

---

[4] Officer Cabello died unexpectedly shortly after trial while in training for a federal law enforcement position.  *Exh. J* at 6.

*Exhs. P-S.* This federal action followed on January 30, 2001. The three claims in Timms' federal petition are sparse, however construing it liberally, it is apparent he seeks to raise the delay, confrontation, and admissibility of evidence issues presented to the state courts on direct appeal by the public defender. Because Petitioner's admissibility and confrontation clause issues are integral to the speedy trial claim, I analyze those issues first.

## II. ANALYSIS

### *A. Evidentiary Ruling*

Timms argues that the trial court erred when it admitted the baggies into evidence because there was a "discrepancy" in the chain of custody. He implies that the baggies had been altered or tampered with during the many years in which they remained in evidence storage. *See Exh. L* at 8-9. An error in admission of evidence is an error of state law that is not cognizable in habeas corpus unless it rendered Petitioner's trial fundamentally unfair. *E. g., Duvall v. Reynolds,* 139 F. 3d 768, 787 (10th Cir.), *cert. denied,* 525 U. S. 933 (1998). "'A trial is fundamentally unfair . . . if it is shocking to the universal sense of justice.'" *United States v. Tome,* 3 F. 3d 342, 353 (10th Cir. 1993) (quoting *United States v. Russell,* 411 U. S. 423, 432 (1973)), *rev'd in part on other grounds,* 513 U. S. 150 (1995).

The New Mexico Court of Appeals concluded there was no abuse of discretion:

> We fail to see what that discrepancy is. Agent Cabello testified that he logged both baggies of marijuana into evidence on the day that he received them. They were stored in the police department evidence room. In 1998, Agent Cabello took the baggies from the evidence room in order to send them to the state crime lab for testing. He testified that the baggies did not appear to have been tampered with. The expert from the crime lab testified that he received the package containing the baggies via registered mail and that the package was sealed and taped and bore the initials "A.C."

> He testified that the weight of the package was less then (sic) he
> had anticipated, but that this reduction was entirely consistent with
> the substance having dried up over time.

*Exh. M* at 5-6.

I recognize that New Mexico courts do not necessarily review transcripts of any sort on direct review. *See Elliot v. Williams,* 248 F.3d 1205, 1209 n.4, 1212 n.7 (10th Cir. 2001). Nevertheless, I can only characterize these state court findings as "findings of fact" which are presumed correct unless rebutted by Petitioner by "clear and convincing" evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner makes no argument or showing here that the facts are otherwise. Thus, for the reasons stated by the New Mexico Court of Appeals, I find no error, much less error that would rise to the level of a due process violation.

### *B. Confrontation Clause*

Petitioner contends that the death of Agent Culbertson prejudiced him because he did not have access to Culbertson's reports and could not "confront" or cross-examine him. Timms baldly asserts that therefore "none of . . . the details of the specific transactions were ever disclosed to the defense." *Ex. L* at 7; *see also Exh. C,* ¶¶ 17-21; *Exh. J* at 3-5. The New Mexico Court of Appeals rejected the claim:

> Defendant continues to argue that he was denied his right to
> confront and cross-examine witnesses against him due to the delay
> in prosecution. As we pointed out in the notice, it did not appear
> that any evidence was presented at trial regarding Agent
> Culbertson's involvement in the transactions. Thus, Agent
> Culbertson was not a witness against Defendant and Defendant's
> right to confrontation was not violated. Defendant provides no
> new argument, but simply states that he was put at a disadvantage
> in his case because Agent Culbertson had died in the interim and he
> was the only one who really knew certain things about the
> transaction. That assertion is not supported by the record, which

*Exh. M* at 4.

Indeed, a witness must testify, and testify against a defendant, for the Confrontation Clause to attach. *See e.g., Pennsylvania v. Ritchie,* 480 U.S. 39, 51-53 (1987) (and authorities cited therein); *United States v. McHorse,* 179 F.3d 889, 900 (10th Cir.), *cert. denied,* 528 U.S. 944 (1999); THIRTEENTH ANNUAL REVIEW OF CRIMINAL PROCEDURE, 89 Geo.L.Rev. 1620, n.1866 (2001) (and cases cited therein). Neither situation occurred with respect to Agent Culbertson.

On direct appeal Timms' counsel also mentioned, without elaboration, that "a confidential informant was initially used the investigation of these transactions, but Officer Cabello testified at the preliminary hearing that Agent Culbertson was in charge and that only he knew any of this information." *Exh. L* at 7. If the confrontation claim is based on the lack of the informant at the trial, the claim also fails because

> the Confrontation Clause is not a guarantee that the prosecution
> will call all the witnesses it has against the defendant. In *Cooper v.
> California,* 386 U.S. 58, 62, fn. 2, (1967), the United States
> Supreme Court found that a criminal defendant is not deprived of
> his right to confrontation when the prosecution does not call a
> witness to testify against him. The prosecution has no obligation to
> call an informant as a witness, and the accused generally may not
> confront an informant who provides no evidence at trial.

*United States v. Morgan,* 757 F.2d 1074, 1076 (10th Cir. 1985). Therefore, I find that the decision by the New Mexico Court of Appeals is not contrary to established Supreme Court

precedent.[5]

### C. Speedy Trial Issues

The Sixth Amendment right to a speedy trial is "designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the . . . impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald,* 456 U.S. 1, 8 (1982). It does not protect against all results that flow from pretrial delays. *United States v. Loud Hawk,* 474 U.S. 302, 311 (1986).

The right to a speedy trial attaches when a defendant is accused. "Accusation" does not encompass the time during which "prosecuting authorities [merely] had knowledge of the offense." *Marion,* 404 U.S. at 319 (internal quotations and citation omitted). Rather, accusation means either a "formal indictment or information" or "actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion,* 404 U.S. 307, 320 (1971). Thus,

---

[5] In addition, there were other Sixth Amendment theories with regard to the confidential informant that Petitioner did not pursue. For example, Petitioner did not pursue a Sixth Amendment claim for failure to disclose the identity of the informant under *Rovario v. United States,* 353 U.S. 53 (1957). Indeed, Officer Cabello purchased the drugs from Timms on more than one occasion and they were the only two present when the purchases took place. *E.g., Gaines v. Hess,* 662 F.2d 1364, 1368 (10th Cir. 1981); *see also Exh. J* at 1-2. Petitioner also did not pursue a Sixth Amendment compulsory process claim or argue that Agent Culbertson's reports or testimony would have produced exculpatory evidence. *E.g., Richmond v. Embry,* 122 F.3d 866, 872 (10th Cir. 1997), *cert. denied,* 522 U.S. 1122 (1998). Instead, Timms suggested that information Agent Culbertson could have provided and his reports would have bolstered his ability to challenge **Officer Cabello's** testimony for veracity or bias: "Cabello was not wearing a 'wire,' and Culbertson did not use any other means to either enhance his surveillance of or record the transactions. Culbertson never searched Cabello, either prior to or subsequent to the transactions to insure that the evidence could not be 'planted' by Cabello." *Exh. J* at 4-5. Finally, insofar as due process is mentioned in passing in connection with this claim, I find the analysis above disposes of that issue as well. *See Exh. L* at 7.

while Sixth Amendment speedy trial rights can begin before the formal charge, they do not attach any earlier than arrest. *Id.* at 321-22, 324; *see also United States v. Pierce,* 246 F.3d 670, 2001 WL 285153 (4th Cir. 3/23/01) ("seventeen month delay between the time the federal complaint and arrest warrant issued and the date of his arrest" did not trigger Sixth Amendment speedy trial right).[6]

### *(1) Right Attached In 1998*

On appeal, Petitioner's attorney characterized the documents filed in Lea County Magistrate Court in October 1992 as "informations" and argued that Sixth Amendment speedy trial rights attached upon those filings. *Exh. J* at 2. The New Mexico Court of Appeals rejected this argument and instead characterized the filings as "complaints." The court held that the constitutional right to speedy trial did not attach until 1998 when Petitioner was brought before the magistrate court after his second arrest:

> Defendant continues to argue that his rights were triggered on October 27, 1992, when the charges against him were filed. We disagree. As we recently held in *State v. Ross* . . . the filing of charges in magistrate court is insufficient to trigger a defendant's speedy trial rights for felony charges. '[T]he filing of felony

---

[6] Claims of excessive delay between the commission of a crime and arrest or formal charge are protected by criminal statutes of limitation or, to a limited extent, due process. *See MacDonald,* 456 U.S. at 7-8.; *United States v. Lovasco,* 431 U.S. 783, 789 (1977). Unlike the Sixth Amendment, the Due Process Clause protects against "prejudice to the defense caused by the passage of time." *MacDonald,* 456 U.S. at 8. Nowhere in the state court proceedings did counsel raise a due process claim with respect to the delay issue, which would have required Timms to demonstrate "both that the delay caused actual prejudice and that the government delayed purposefully in order to gain a tactical advantage." *United States v. Trammell,* 133 F.3d 1343, 1351 (10th Cir. 1998). The proposed summary affirmance assumed Timms raised a due process claim and found he failed to make either showing. *Exh. K.* In her memorandum opposing the summary affirmance and petition for certiorari, counsel did not argue the point. *See Exhs. L, P.* As discussed later in this recommended disposition, I find no basis for concluding the prosecution purposefully delayed.

> charges must be preceded by a probable cause determination –
> either a preliminary hearing (or waiver thereof) for an information
> or a grand jury proceeding for an indictment.' *Id.* Here, there is no
> suggestion that a preliminary hearing was held in magistrate court
> in 1992. Nor was there a grand jury proceeding. Rather, it appears
> simply that a criminal complaint was filed in magistrate court. *See*
> Rule 5-201 NMRA 1999. This is insufficient to trigger the
> Defendant's speedy trial rights.
>
> Further, the attachment of the right can be triggered not
> only by proper charge, but also by an arrest and holding to answer
> for the charges. *See Salandre v. State,* 111 N.M. 422, 245-26, 806
> P.2d 562, 565-66 (1991). Here, when Defendant was arrested in
> Texas [the first time], he was not held to answer for the charges,
> but rather was released by the Texas officials on his habeas corpus
> petition. Because he was released with no 'actual restraints' on his
> liberty, we cannot say that Defendant was held to answer for any
> charges. The fact that the charges apparently remained pending in
> the magistrate court from 1992 until 1998 does not affect our
> holding. Defendant was not being held to answer for the charges.
> Thus, his speedy trial rights were not triggered in 1992.

*Exh. M* at 2.

The record does not contain a copy of the 1992 documents or the materials submitted with the New Mexico Governor's 1993 extradition warrant. Nor does it appear that the New Mexico Court of Appeals had a copy of the documents or found as a matter of fact they were captioned as "complaints." By citing the *Ross* decision and Rule 5-201, I can only conclude that the court held that no formal charge was filed in 1992 as a matter of state law, and that even if the 1992 magistrate court documents bore an "information" caption, such a designation would have been immaterial.[7]

---

[7] *Ross* held:

> The filing of the complaint in magistrate court was insufficient to
> trigger Defendant's speedy trial right for the felony charges. The
> New Mexico Constitution, Article II, Section 14, requires the State
> to file an indictment or information before commencing a felony

Because the Sixth Amendment speedy trial right "has no application beyond the confines of a formal criminal prosecution," *Doggett v. United States,* 505 U.S. 647, 655 (1992), a crucial inquiry for Sixth Amendment purposes is whether "charges are pending," *MacDonald,* 456 U.S. at 7. In an unpublished decision, the Tenth Circuit indicated that whether charges are "pending" is a matter of state law. *Wright v. Deland,* 986 F.2d 1432, 1992 WL 18625 (10th Cir. 1/27/93) ("although the question of whether one is 'accused' for purposes for the Sixth Amendment is one

---

        prosecution: 'No person shall be held to answer for a . . . felonious . . . crime unless on a presentment or indictment of a grant jury or information filed by a district attorney . . . .' In either case, the filing of felony charges must be preceded by a probable cause determination – either a preliminary hearing (or waiver thereof) for an information or a grand jury proceeding for an indictment . . . . These authorities suggest that the charging document upon which a felony prosecution can proceed requires a certain, heightened formality.
        Our conclusion is strengthened by the fact that the information/indictment requirement is a matter of jurisdiction; that is, until the State files an information or indictment, the district court is without jurisdiction to try the defendant."

*State v. Ross,* 128 N.M. 222, 225-26 (Ct. App.), *cert. granted,* 128 N.M. 150 (1999), *and cert. quashed,* 129 N.M. 209 (N.M. 2000).

    N.M.R.Crim.P 5-201(C) provides that an information "may be filed only in the district court . . . after completion of a preliminary examination or waiver thereof." Committee commentary to the rule notes that if a complaint filed in magistrate court is for a felony, "the defendant may be held to answer only on an information or indictment." It also notes that if a complaint for a felony is filed in magistrate court, magistrates are only empowered to: determine probable cause to confine, conduct a first appearance, set conditions of release, and conduct preliminary examinations.

    Like an indictment or information, a complaint triggers the applicable statute of limitations, which is tolled when a Defendant "go[es] out of the state," N.M. STAT. ANN. §§ 30-1-8 & -9. Under Texas extradition statutes, either an information/indictment or an authenticated complaint and warrant can be used to support an extradition request. *See Ex Parte Sawyers,* 409 S.W.2d 424, 425 (Tex. Crim. App. 1966); Vernon's Ann. Texas C.C.P. Art. 51.13 § 3 ("or by a copy of an affidavit before a magistrate there, together with a copy of any warrant which issued thereupon").

of federal law, the issue of whether charges were pending . . . is ultimately a question of state law"), *cert. denied,* 510 U.S. 834 (1993), *and later proceedings Wright v. McCotter,* 173 F.2d 865, 1999 WL 147238 (10th Cir. 3/18/99) ("the district court correctly determined that there are no new or intervening facts or law that warrant review of the Sixth Amendment speedy trial claim").[8]

Regardless of whether I apply state or federal law, the result here is the same. As the state decision and footnote seven to my analysis illustrate, under New Mexico law, complaints filed in Magistrate Court do not formally commence a felony prosecution, and indictments can only be filed in state district court following a probable cause determination. As the state court observed, nothing in this record suggests a probable cause determination in 1992. Indeed, this matter was not bound over the state district court until after a 1998 preliminary hearing.

In addition, Petitioner was not "arrested and held" on the New Mexico felony charges when he appeared before the Texas court. Under the Texas extradition statute, the Texas arrest merely notified him of the New Mexico charge and afforded him an opportunity to resist being sent to New Mexico to answer to the charge.[9] Because no formal charges were pending as a

---

[8] On the other hand, at least one other circuit has refused to apply a state's interpretation of when charges were pending for Sixth Amendment purposes. *See Pharm v. Hatcher,* 984 F.2d 783, 785-86 (7th Cir.), *cert. denied,* 510 U.S. 841 (1993) (Wisconsin courts follow rule that defendant is officially accused when complaint issues; however for Sixth Amendment purposes in federal habeas corpus, the Seventh Circuit applied date of arrest on the charge, which occurred thirteen years after state complaint and arrest warrant were filed).

[9] No person arrested upon such warrant shall be delivered over to the agent whom the Executive Authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and

12

matter of state law in 1992, and because Petitioner was not actually "arrested" and held to answer on the New Mexico charges until 1998, I find that the state court ruling is not contrary to established Supreme Court precedent. Petitioner's Sixth Amendment rights did not attach until 1998, and there is no claim that Timms' trial was unconstitutionally delayed following the 1998 arrest.

### *(2) Alternatively, Barker Factors Balance In Favor Of Prosecution*

In the alternative, the New Mexico Court of Appeals assumed that speedy trial rights attached in 1992 but found no violation under *Barker v. Wingo,* 407 U.S. 514 (1972). Under *Barker,* a defendant's conduct is weighed against the prosecution's conduct in a multifactor balancing analysis to determine whether a Sixth Amendment violation occurred. *Id.* at 530. The four *Barker* factors include the length of the delay, reason for the delay, whether a defendant asserts his right to a speedy trial or acquiesces in the delay, and prejudice to a defendant.

Length of delay triggers whether the inquiry goes on to consider and balance the other factors. *Id.* Although no one factor is dispositive, all of the factors are interrelated and must be considered. "[N]one of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related

---

> procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such a writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding State.

Vernon's Ann. Texas C.C.P. Art. 51.13 § 10.

factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

The New Mexico Court of Appeals implicitly found that the delay in this case would be considered presumptively prejudicial thereby triggering further inquiry. Indeed, even a delay of five years is presumptively prejudicial and sufficient to require analysis into the other factors. *Doggett,* 505 U.S. at 652 ("the extraordinary 8½ year lag time between *Doggett's* indictment and arrest clearly suffices to trigger the speedy trial enquiry"); *Barker,* 407 U.S. at 533 (delay of five years between arrest and trial "extraordinary").

Petitioner contended two factors weighed in his favor: the reason for the delay and actual prejudice due to the death of Agent Culbertson.[10] The New Mexico Court of Appeals did not discuss the two factors Petitioner argued in conducting its balancing analysis:

> Even if we were to assume that the right attached in 1992, triggering our analysis of the *Barker* . . . factors, we hold that the reasons for the delay and the assertion of the right weigh so heavily against Defendant that his right to a speedy trial was not violated. When Defendant successfully fought extradition from Texas, he thwarted his rights to a speedy trial. This action evidences a complete and total failure to ask for a speedy trial. Defendant contends that we should not find no violation of the speedy trial rights when only one factor weighs against Defendant. We disagree. "[N]o one factor constitutes either a necessary or

---

[10] In the state courts counsel argued because the delay was presumptively prejudicial, the burden shifted to the state to show "no prejudice" under the state decision in *Salandre*. However, *Salandre* does not dictate the appropriate analysis here. Federal law applies to the Sixth Amendment claim in this habeas proceeding. *See Beckwith v. Anderson,* 89 F. Supp.2d 788, 799 (S.D. Miss. 2000) ("Beckwith further relies on a series of Mississippi state court cases to support his argument that Respondents carry the burden of proving that Beckwith caused the trial delay. . . . However, in supporting a Sixth Amendment speedy trial claim under § 2254, reliance on state court case law is misguided. Section 2254 states that a writ of habeas corpus will not be granted unless the underlying state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law'").

> sufficient condition to finding a deprivation of the right to speedy
> trial." *Zurla v. State,* 109 N.M. 640, 642, 789 P.2d 588, 590
> (1990). We do not believe that we are giving undue weight to any
> one factor when we hold that, by fighting extradition, Defendant
> was responsible for defeating any speedy trial rights that he may
> have had.

*Exh. M* at 2-3. Because the state court either did not consider all of the other factors, or at least did not explain how it weighed and balanced those along with the one it found dispositive, I independently analyze the balance of the remaining factors. *See Aycox v. Lytle,* 196 F.3d 1174, 1176-77 (10th Cir. 1999) (result is entitled to deference even if state court's reasoning not supplied). Although this case is similar to *Doggett*, where the Supreme Court found a speedy trial violation, I conclude that the balance tips in favor of finding no violation.

The State apparently has never explained how Timms' successful effort at avoiding extradition affected its decision to make a second attempt, or why it waited as long as it did before its second attempt. I will not speculate as to its motives. On the other hand, there is nothing in the record suggesting that the state delayed in bad faith in an attempt to gain some tactical advantage in the prosecution.[11] *Cf. Castro v. Ward,* 138 F.3d 810, 820 (10th Cir.) ("no evidence that the State's motivation for delaying the trial was to gain any tactical advantage"), *cert. denied,* 525 U.S. 971 (1998). Delay in a simple drug case can work to a defendant's advantage and the prosecution's disadvantage, as easily as the converse. *See, e.g., Loud Hawk,* 302 U.S. at 315; *Barker,* 407 U.S. at 514; *United States v. Trankakos,* 911 F.2d 1422, 1429 (10th Cir. 1990). At most, I find the delay to be negligent. This factor, coupled with the length of the

---

[11] Similarly, Defendant does not contend that the refiling of charges was an attempt to avoid the dictates for a speedy trial. In his docketing statement to the New Mexico Court of Appeals, Defendant has asserted that the charges were refiled at "the Magistrate Court's suggestion." *Exh. J* at 3.

15

delay, weighs in favor of finding a violation, though not overwhelmingly.  *See Doggett,* 505 U.S. at 657-58; *Barker,* 407 U.S. at 531.

Counterbalancing and outweighing that factor, however, Timms was not incarcerated all the years he was living in Texas even though he knew that New Mexico wanted to prosecute him. *See Kalady,* 941 F.2d 1090, 1095 (10th Cir. 1991).  More importantly, Timms did not invoke his speedy trial rights until he was about to be tried.  Indeed, Petitioner effectively contributed to the delay by successfully challenging extradition in 1993.  *Doggett,* 505 U.S. at 653 (if defendant "knew of his indictment years before he was arrested," that fact "would be weighed heavily against him"); *Loud Hawk,* 474 U.S. at 314-15 (defendants' assertion of speedy trial "must be viewed in the light of [their] other conduct. . . .  [While they were claiming] speedy trial, they consumed six months by filing indisputably frivolous petitions for rehearing and for certiorari . . . and repetitive and unsuccessful motions"); *Barker,* 407 U.S. at 534-35 ("record strongly suggest that while [defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried"); *Trankakos,* 911 F.3d at 1429 ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire").

Finally, Timms does not identify any witnesses other than Agent Culbertson who "would have been available but for the delay" or how their "memories have faded as a result of the delay."  *United States v. Dirden,* 38 F.3d 1131, 1138 (10th Cir. 1994); *see also Tranakos,* 911 F.2d at 1429 (by failing to offer proof of exculpatory testimony a deceased coconspirator would have presented, defendant failed to establish causal relationship between the death and the prejudice claimed).  "Prejudice occurs only when '*defense* witnesses are unable to recall accurately events

of the distant past.' If the witnesses support the prosecution, *its* case will be weakened.'" *Tranakos,* 911 F.3d at 1429 (quoting and supplying emphasis to *Barker,* 407 at 521, 532.). Petitioner has never contended that the delay resulted in the loss of someone who could testify for him, for example, testify to the "alibi" evidence he presented to the Texas court.

I find the record presents no other circumstances to consider and, on balance, all of the factors discussed above weigh in favor of finding no speedy trial violation. Timms knew as early as 1993 that the State sought to prosecute him. By challenging extradition as opposed to then asserting his speedy trial rights, he suffered no prejudice as a result of the delay.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** the petition be dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE